John J. Kane (SBN 24066794)
Kyle Woodard (SBN 24102661)
JaKayla J. DaBera (SBN 24129114)
Joseph M. Coleman (SBN 04566100)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Email: jkane@krcl.com
Email: kwoodard@krcl.com
Email: jdabera@krcl.com
Email: jcoleman@krcl.com

Mark C. Taylor (SBN 19713225)
Casey Roy (SBN 00791578)
**KANE RUSSELL COLEMAN LOGAN PC**
401 Congress Ave., Suite 2100
Austin, Texas 78701
Telephone: (512) 487-6650
Email: mtaylor@krcl.com
Email: croy@krcl.com



**COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| BUDDY MAC HOLDINGS, LLC, *et al.*, | § § § | Case No. 25-34839-mvl11 |
| Debtors. [1] | § § § § § § § | (Initial Debtor Cases Jointly Administered)<br><br>(Joint Administration Requested for Subsequent Debtor Cases) |

## DEBTORS' <u>EMERGENCY</u> MOTION FOR (I) APPROVAL OF SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND PHONIX RBS LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; AND (II) GRANTING RELATED RELIEF

---

> **Emergency relief has been requested.  Relief is requested not later than <u>1:30 p.m. CT on Tuesday, February 10, 2026</u>.**
>
> **If you object to the relief requested or believe that emergency consideration is not warranted, you must appear at the hearing, if one is set, or file a written response prior to the date and time that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and**

---

[1] A complete list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax ID numbers, is set forth on the attached <u>**Schedule I**</u> (Initial Debtors) and <u>**Schedule II**</u> (Subsequent Debtors). The Debtors' service address is 400 E. Centre Park Blvd., Suite 101, DeSoto, Texas 75115.

> **grant the relief requested.**
>
> **A hearing will be conducted on this matter on <u>Tuesday, February 10, 2026 at 1:30 p.m. CT</u> in Courtroom #2, 14th Floor, Earle Cabell Federal Building, 1100 Commerce Street, Dallas, TX 75242. You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 650-479-3207, access code 2301 476 1957. Video communication will be by use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Larson's home page. The meeting code is 23014761957. Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of electronic hearings. To make your appearance, click the "Electronic Appearance" link on Judge Larson's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Buddy Mac Holdings, LLC and its debtor subsidiaries and affiliates, and other entities jointly administered under the above case, as debtors and debtors-in-possession in the above-referenced chapter 11 cases (collectively, the "<u>Debtors</u>"), file this *Emergency Motion for (I) Approval of Compromise Between the Debtors and Phonix RBS LLC Pursuant to Federal Rule of Bankruptcy Procedure 9019 (II) and Granting Related Relief* (the "<u>Motion</u>") and, in support hereof, respectfully state as follows:

## **<u>RELIEF REQUESTED</u>**

1.      The Debtors request entry of an order, substantially in the form of proposed order attached hereto (the "<u>9019 Order</u>") (i) approving the Settlement Agreement dated January 25, 2026 attached hereto as **<u>Exhibit A</u>** (the "<u>Settlement Agreement</u>")[2] by and among William Ian MacDonald and certain affiliated MacDonald Entities identified on Schedule 1 to the Settlement Agreement (collectively, "<u>MacDonald</u>"), the Debtors**,** and Phonix RBS LLC ("<u>Phonix</u>") pursuant

---

[2] All capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

to Bankruptcy Rule 9019; and (ii) granting related relief.

## JURISDICTION AND VENUE

2.      The United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court"), has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding within the meaning of 28 U.S.C. § 157.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The legal predicates for the relief requested herein are section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), rules 6004(h) and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9019-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "Local Rules").

## BACKGROUND

**I.      The Debtors' Bankruptcy Cases**

5.      On or about December 4, 2025 (the "Initial Petition Date"), Buddy Mac Holdings, LLC and its debtor affiliates identified on the attached Schedule I (the "Initial Debtors") each filed a voluntary petition for relief in this Court under chapter 11 of Bankruptcy Code. Four (4) Initial Debtors—(i) Buddy Mac One, LLC, (ii) BMH One RE, LLC, (iii) BMH 95 RE Caruthersville, LLC, and (iv) BMH 96 RE Marion, LLC—filed their chapter 11 petitions on December 1, 2025. The other forty-five (45) Initial Debtors filed their chapter 11 petitions on December 4, 2025.

6.      On January 25, 2026 (the "Subsequent Petition Date"), the additional affiliates of Buddy Mac Holdings, LLC identified on Schedule II (the "Subsequent Debtors") each filed a voluntary petition in this Court under chapter 11 of the Bankruptcy Code. The Initial Debtors and the Subsequent Debtors are collectively referenced as the "Debtors," and each as a "Debtor."

7.      Information regarding the Debtors' business history, capital structure, and

circumstances leading to these chapter 11 cases is set forth in the *Declaration of William I. MacDonald* [ECF #12] and the *Declaration of Mark Shapiro* [ECF #13] (collectively, the "First Day Declarations") filed in support of the Debtors' voluntary petitions and first-day motions. Additional information may be found in the *Supplemental Declaration of William I. MacDonald* [ECF #171] and the *Supplemental Declaration of Mark Shapiro* [ECF #169] related to the commencement of the Subsequent Debtors' cases (the "Supplemental Declarations").

## II.    The Debtors' Ongoing Disputes with Phonix

8.    The Debtors and their subsidiaries (collectively, the "Company") operate rent-to-own furniture and appliance retail stores that rent and sell home furnishings, electronics, and appliances on a rent-to-own basis. The Company currently operates 46 store locations, 32 of which are operated by Initial Debtors and  of which are operated by Subsequent Debtors.

9.    Phonix is the BMH Debtors' pre-petition secured creditor with a blanket lien on all BMH Debtor assets, including cash collateral, after acquiring the prepetition loan held by INTRUST Bank, N.A. (the "Prepetition Loan") through assignment of certain loan documents pursuant to a Loan Sale Agreement dated as of September 2, 2025. Phonix asserts that it is owed secured obligations in an aggregate amount of at least $12.83 million. William Ian MacDonald has guaranteed the payment of the Phonix pre-petition indebtedness.

10.    Almost immediately upon acquiring the RTO Loan from INTRUST, Phonix began seeking to enforce remedies under the assigned loan documents. Prior to the Petition Date, Phonix filed enforcement actions against the BMH Debtors and William Ian MacDonald, including, without limitation, a receivership petition in Kansas state court and a claim asserting tort and other claims against William Ian MacDonald in Texas state court. Phonix also initiated foreclosure proceedings for each of the properties pledged as collateral for the prepetition debt. The Debtors

- 4 -

made repeated good faith efforts to negotiate and reach a resolution with Phonix to no avail and ultimately filed for bankruptcy relief.

### III.    Key Settlement Terms

11.    A summary[3] of key terms of the Settlement Agreement are set forth below:

a.    **Bankruptcy Court Approval**: The Settlement Agreement requires approval by the Court. Absent such approval, the Settlement Agreement shall be null and void and of no force and effect as if the Settlement Agreement had never been executed.

b.    **Entry of the Interim DIP Order**. The Settlement Agreement requires entry by the Court of an order authorizing and approving postpetition financing (the "DIP Loan") from Phonix pursuant to that certain Secured Superpriority Debtor-In-Possession Loan, Security, and Guaranty Agreement (the "DIP Credit Agreement") and all such other related documents.

c.    **Additional Consideration from William Ian MacDonald**. William Ian MacDonald and certain affiliated MacDonald Entities shall grant Phonix a lien on and interest in certain additional collateral including (i) the Subject Boulders Interest; (ii) the PEC LP Interests; and (iii) the Subject Alvarado Real Property. They shall also grant the Debtors' estate a 15% interest in the net proceeds of the Subject Boulders Interest.

d.    **Subordination of Phonix's Deficiency Claim**. Phonix agrees to subordinate any deficiency claim, whatever the priority or character of that deficiency claim under the Final DIP Order, that it may have to the claims of general unsecured creditors solely for purposes of enabling distribution of the Estate Boulders Share, and any contingent recoveries upon estate claims and causes of action arising under Chapter 5 not released pursuant to the Settlement Agreement, the Final DIP Order, or the any sale order authorizing the sale of substantially all of the Debtors' assets, to unsecured creditors, and facilitating plan confirmation.

e.    **Right to Credit Bid**. Phonix shall be designated as the stalking horse bidder for the sale of substantially all of the Debtors' assets, with the exclusion of certain real property located in Tyler, Texas, and will be permitted to acquire such assets in a credit bid; *provided that* third parties may top the credit bid at the sale hearing by submitting a higher and better offer, subject

---

[3] The following summary is being provided for convenience of the Court and the parties-in-interest, who are encouraged to review the Settlement Agreement in detail. If there are inconsistencies between the above summary in the Motion and the terms of the Settlement Agreement, the Settlement Agreement shall govern.

to bidding and sale procedures acceptable to Phonix which shall include an agreed minimum bid increment and reasonable bid protections and expense reimbursement.

f.    **Mutual Releases**. As more fully set forth and described in the Settlement Agreement, the Debtors, William Ian MacDonald, the MacDonald Entities, and Phonix agreed to grant mutual releases for various claims and causes of action including: (i) *as to the MacDonald Releasees from the Estate Releasors*, any claims against the MacDonald Releasees arising out of, related to or in connection with chapter 5 of the Bankruptcy Code or arising from MacDonald's actions or inactions in any capacity, including as chief executive officer, director, manager or authorized representative of the Debtors; (ii) *as to the MacDonald Releasees from Phonix*, claims against the MacDonald Releasees in connection with the Phonix Pre-Petition Debt Documents, any guaranty claims in respect of such Phonix Pre-Petition Debt Documents, and arising out of, related to or in connection with the Phonix MacDonald Pre-Petition Enforcement Actions; (iii) *as to Phonix from the Debtors/MacDonald Releasors*, any claims which the Debtor/MacDonald Releasors have, have had, may have or may claim to have against the Phonix Releasees arising out of, related to or in connection with the Pre-Petition Debt Documents and arising out of, related to or in connection with the Phonix MacDonald Pre-Petition Enforcement Actions; and (iv) a waiver and release of any claims and/or causes of action, including but not limited to Chapter 5 causes of action, which could arise from those transfers referenced in the Plains Capital Bank Deposit Report(s) dated January 15, 2026.

## BASIS FOR RELIEF

12.    The Debtors request that the Court enter the proposed 9019 order approving the

Settlement Agreement Pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

Bankruptcy Rule 9019 provides in relevant part that, "[o]n motion by the trustee and after notice

and a hearing, the court may approve a compromise and settlement." FED. R. BANKR. P. 9019(a).

Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve compromises and settlements

if they are "'fair and equitable and in the best interest of the estate.'" *In re Cajun Elec. Power

Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997); *In re Foster Mortgage Corp.*, 68 F.3d 914, 917

(5th Cir. 1995).

13.    Approval of the compromise or settlement is committed to the sound discretion of

the bankruptcy courts, and the courts must make an informed and independent analysis to determine whether the proposed settlement is fair and equitable and in the best interests of the debtor's bankruptcy estate. *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, *reh'g denied*, 391 U.S. 909 (1968); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *River City v. Herpel, (In re Jackson Brewing Co.)*, 624 F.2d 599, 602-603 (5th Cir. 1980).

14.     Courts in the Fifth Circuit, apply the three-part test set out in *In re Jackson Brewing Co.*, with a focus on comparing "the terms of the compromise with the likely rewards of litigation", to determine whether a settlement is fair and equitable, a bankruptcy court must *Id*. at 602 and 609. The bankruptcy court must evaluate: (1) the probability of success in litigation of the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. *Id*. The other factors include: (i) the best interest of the creditors, with proper deference to their reasonable views; and (ii) the extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion. *Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015); *In re Foster Mortgage Corp.*, 68 F.3d at 917-18.

15.     The Settlement Agreement satisfies each of these factors.

16.     **Probability of Success and the Complexity and Duration of Litigation**. The Parties have been involved in disputes since Phonix's acquisition of the Prepetition Loan. The disputes led to the Phonix Pre-Petition MacDonald Enforcement Actions and the Debtors' bankruptcy filing. Post-petition, The Debtors and Phonix continue to litigate various matters including the Debtors' use of cash collateral. The Settlement Agreement resolves these ongoing

11825814v2 (75669.00002.000)

disputes and provides the Debtors with meaningful financing.

17.     Moreover, the Settlement Agreement is a condition precedent to the Debtors'
receipt of critical postpetition financing from Phonix. The failure to receive financing will likely
result in the Debtors' inability to operate under chapter 11 necessitating case conversion or
dismissal.  Moreover, the Debtors are unlikely to procure alternative case-saving financing for the
reasons set forth in the *Supplemental Declaration of Mark Shapiro in Support of the Debtors' Sale
and DIP Financing Motions and Motions for Emergency Hearing* filed on January 26, 2025.  Any
alternative DIP financing proposal is actually likely to *increase* the Debtors' litigation exposure.

18.     **Best Interests of Creditors**. The Debtors believe that the Settlement Agreement,
including the mutual releases contemplated therein, is in the best interests of all creditors and
parties-in- interest. The Settlement Agreement resolves all disputes between the Parties and results
in the cessation of post-petition litigation and creates a path for a value-maximizing sale process.

19.     Further, the Debtors believe that the releases provided to the MacDonald parties are
in the best interests of the creditors and the Debtors' estates. The Debtors believe that the
MacDonald parties are providing meaningful consideration in the form of assets to collateralize
the DIP Loan, which will allow the Debtors to operate as a going concern and to pursue a
competitive sale process on a reasonable timeline under the circumstances.   Without the
MacDonald parties' consideration, the Debtors would therefore likely be forced to convert to
Chapter 7, shutter stores, terminate employees, and pursue a value-crushing fire sale liquidation
detrimental to all case parties.  The additional MacDonald consideration is also critical to the
resolution of pending claims and litigation with Phonix, which present a barrier to restructuring
and heavy costs on the Debtors' estates.

20.     In addition, MacDonald is contributing 15% of the proceeds derived from the sale

11825814v2 (75669.00002.000)

of the Boulders Property to the Debtors' estates (the "<u>Estate Boulders Share</u>"). The Estate Boulders

Share will provide a meaningful upside to the Debtors' estates and could pave the road for surplus

assets from which to make distributions to unsecured creditors.  Also, as a result of the contribution

of additional collateral by the MacDonald parties, Phonix has agreed to subordinate any deficiency

claim that it may hold.  The Debtors do not believe that Phonix would be willing to subordinate its

deficiency claim but for the additional collateral provided by the MacDonald parties.  The

subordination of Phonix's potentially large deficiency claim ensures that, regardless of the

outcome of any proposed sale of the Debtors' assets, Phonix's deficiency claim will not have a

preclusive effect on distributions to the Debtors' creditors.

21.     **<u>Arms-Length Negotiation</u>**. The Settlement Agreement was obtained through

arms-length negotiation between the parties. The Parties and their professionals extensively

negotiated at arms-length and in good faith regarding a resolution of all pending disputes between

the Parties. Neither party was subject to any undue influence to execute the Settlement Agreement,

and there was no collusion between any affected party.

22.     **<u>Business Judgment</u>**. The Settlement Agreement is within the reasonable business

judgment of the Debtors. The Debtors and their professionals counselors have spent hundreds of

hours reviewing the pending litigation, analyzing the issues, reviewing and analyzing claims,

discussing potential outcomes, and assessing the relative risks and rewards of continuing litigating

against Phonix in and out of bankruptcy. The Debtors believe that the settlement is in the best

interest of creditors and the estates because it will: (a) settle ongoing litigation between the Debtors

and Phonix; (b) cease the continued diminution of estate funds due to litigating ongoing disputes;

and (c) provide necessary financing to fund these chapter 11 cases. The Settlement Agreement

represents a fair and equitable remedy for the Debtors, Phonix, and all creditors and parties-in-

11825814v2 (75669.00002.000)

interest.

23.    Bottom line—the Debtors need access to postpetition financing in order to maximize value for beneficiaries of the Debtors' estates. That financing is unavailable outside of finalizing a deal with Phonix which includes approval of the Settlement Agreement. Accordingly, the Debtors assert that the Settlement Agreement meets the requisite standards for approval and should be approved by the Court.

## NOTICE

24.    The Debtors will provide notice of this motion to the following parties or their counsel, if known: (a) the U.S. Trustee; (b) the Committee; (c) the Consolidated Creditor Matrix; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is needed.

WHEREFORE, the Debtors request that this Court enter an order, substantially in the form attached hereto, granting the relief requested herein and such other and further relief as this Court may deem just and proper.

*[remainder of page intentionally left blank]*

- 10 -

11825814v2 (75669.00002.000)

Dated: January 26, 2026                  Respectfully submitted,

                                         **KANE RUSSELL COLEMAN LOGAN PC**

                                         */s/ JaKayla J. DaBera*
                                         Joseph M. Coleman (SBN 04566100)
                                         John J. Kane (SBN 24066794)
                                         Kyle Woodard (SBN 24102661)
                                         JaKayla J. DaBera (SBN 24129114)
                                         901 Main Street, Suite 5200
                                         Dallas, Texas 75202
                                         Telephone: (214) 777-4200
                                         Email: jcoleman@krcl.com
                                         Email: jkane@krcl.com
                                         Email: kwoodard@krcl.com
                                         Email: jdabera@krcl.com

                                         - and -

                                         Mark C. Taylor (SBN 19713225)
                                         Casey Roy (SBN 00791578)
                                         401 Congress Ave., Suite 2100
                                         Austin, Texas 78701
                                         Telephone: (512) 487-6650
                                         Email: mtaylor@krcl.com
                                         Email: croy@krcl.com

                                         **COUNSEL FOR DEBTORS AND
                                         DEBTORS-IN-POSSESSION**

**CERTIFICATE OF SERVICE**

        The undersigned hereby certifies that on January 26, 2026, a true and correct copy of the foregoing document, together with all exhibits and attachments hereto, was filed with the Court and served via the Court's CM/ECF system upon all parties registered to receive such electronic service in this bankruptcy case.

                                         */s/ JaKayla J. DaBera*
                                         JaKayla J. DaBera

## Schedule I
### Initial Debtors

|     | Name | Petition Date | Case No. | Tax ID (last 4) |
| --- | --- | --- | --- | --- |
| 1. | Buddy Mac One, LLC | 12/1/2025 | 25-34788 | 0935 |
| 2. | BMH One RE, LLC | 12/1/2025 | 25-34789 | 4305 |
| 3. | BMH 95 RE Caruthersville, LLC | 12/1/2025 | 25-34790 | 1264 |
| 4. | BMH 96 RE Marion, LLC | 12/1/2025 | 25-34791 | 0659 |
| 5. | Buddy Mac Holdings, LLC | 12/4/2025 | 25-34839 | 1297 |
| 6. | BMH RTO, LLC | 12/4/2025 | 25-34840 | 9489 |
| 7. | Buddy Mac Twenty-One, LLC | 12/4/2025 | 25-34841 | 1269 |
| 8. | Buddy Mac Twenty-Two, LLC | 12/4/2025 | 25-34842 | 6474 |
| 9. | Buddy Mac Twenty-Three, LLC | 12/4/2025 | 25-34843 | 3668 |
| 10. | Buddy Mac Twenty-Four, LLC | 12/4/2025 | 25-34844 | 3328 |
| 11. | Buddy Mac Twenty-Five, LLC | 12/4/2025 | 25-34845 | 5604 |
| 12. | Buddy Mac Twenty-Six, LLC | 12/4/2025 | 25-34846 | 5425 |
| 13. | Buddy Mac Twenty-Seven, LLC | 12/4/2025 | 25-34847 | 1574 |
| 14. | BMH-TNM 28, LLC | 12/4/2025 | 25-34848 | 5391 |
| 15. | BMH-TNM 29, LLC | 12/4/2025 | 25-34849 | 0350 |
| 16. | BMH-TNM 30, LLC | 12/4/2025 | 25-34850 | 5692 |
| 17. | BMH-TNM 31, LLC | 12/4/2025 | 25-34851 | 5137 |
| 18. | BMH-TNM 32, LLC | 12/4/2025 | 25-34852 | 3430 |
| 19. | BMH-TNM 33, LLC | 12/4/2025 | 25-34853 | 8037 |
| 20. | BMH-RCL 34, LLC | 12/4/2025 | 25-34854 | 7055 |
| 21. | BMH-RCL 35, LLC | 12/4/2025 | 25-34855 | 7332 |
| 22. | BMH-RCL 36, LLC | 12/4/2025 | 25-34856 | 4707 |
| 23. | BMH-RCL 37, LLC | 12/4/2025 | 25-34857 | 4598 |
| 24. | BMH-RCL 38, LLC | 12/4/2025 | 25-34858 | 7218 |
| 25. | BMH-RCL 39, LLC | 12/4/2025 | 25-34859 | 5340 |
| 26. | BMH-RCL 40, LLC | 12/4/2025 | 25-34860 | 8100 |
| 27. | BMH-RCL 41, LLC | 12/4/2025 | 25-34861 | 5735 |
| 28. | BMH-RCL 42, LLC | 12/4/2025 | 25-34862 | 3438 |
| 29. | BMH-FAN 43, LLC | 12/4/2025 | 25-34863 | 8956 |
| 30. | BMH-FAN 44, LLC | 12/4/2025 | 25-34864 | 9133 |
| 31. | BMH-FAN 45, LLC | 12/4/2025 | 25-34865 | 1642 |
| 32. | BMH-FAN 46, LLC | 12/4/2025 | 25-34866 | 1756 |
| 33. | BMH-FAN 47, LLC | 12/4/2025 | 25-34867 | 7435 |
| 34. | BMH-FAN 48, LLC | 12/4/2025 | 25-34868 | 7860 |
| 35. | BMH-FAN 49, LLC | 12/4/2025 | 25-34869 | 8079 |
| 36. | BMH-FAN 50, LLC | 12/4/2025 | 25-34870 | 8219 |
| 37. | BMH-FAN 51, LLC | 12/4/2025 | 25-34871 | 5786 |
| 38. | BMH-FAN 52, LLC | 12/4/2025 | 25-34872 | 6191 |
| 39. | BMH-FAN 53, LLC | 12/4/2025 | 25-34873 | 6281 |

11825814v2 (75669.00002.000)

| | Name | Petition Date | Case No. | Tax ID (last 4) |
|---|---|---|---|---|
| 40. | BMH-FAN 54, LLC | 12/4/2025 | 25-34874 | 6340 |
| 41. | BMH-SM 79, LLC | 12/4/2025 | 25-34875 | 9545 |
| 42. | BMH-SM 80, LLC | 12/4/2025 | 25-34876 | 9640 |
| 43. | BMH-SM 81, LLC | 12/4/2025 | 25-34877 | 9709 |
| 44. | BMH-SM 82, LLC | 12/4/2025 | 25-34879 | 0107 |
| 45. | BMH-SM 83, LLC | 12/4/2025 | 25-34880 | 0236 |
| 46. | BMH-SM 84, LLC | 12/4/2025 | 25-34881 | 0340 |
| 47. | BMH-SM 85, LLC | 12/4/2025 | 25-34882 | 2526 |
| 48. | BMH-SM 86, LLC | 12/4/2025 | 25-34883 | 2731 |
| 49. | BMH-SM 87, LLC | 12/4/2025 | 25-34884 | 2817 |

11825814v2 (75669.00002.000)

## Schedule II
### Subsequent Debtors

|     | Name | Petition Date | Case No. | Tax ID (last 4) |
| --- | --- | --- | --- | --- |
| 50. | Buddy Mac Two, LLC | 1/25/2026 | 26-30327 | 6357 |
| 51. | Buddy Mac Six, LLC | 1/25/2026 | 26-30328 | 6848 |
| 52. | Buddy Mac Six RE, LLC | 1/25/2026 | 26-30329 | 2150 |
| 53. | Buddy Mac Eight, LLC | 1/25/2026 | 26-30330 | 2634 |
| 54. | Buddy Mac Eleven, LLC | 1/25/2026 | 26-30331 | 5242 |
| 55. | Buddy Mac Twelve, LLC | 1/25/2026 | 26-30332 | 1300 |
| 56. | Buddy Mac Eighteen, LLC | 1/25/2026 | 26-30333 | 0397 |
| 57. | Buddy Mac Nineteen, LLC | 1/25/2026 | 26-30334 | 0149 |
| 58. | BMH-NEW 58, LLC | 1/25/2026 | 26-30335 | 4176 |
| 59. | BMH-NEW 62, LLC | 1/25/2026 | 26-30336 | 7985 |
| 60. | BMH-WF TX 67, LLC | 1/25/2026 | 26-30337 | 0887 |
| 61. | BMH-TB 75, LLC | 1/25/2026 | 26-30338 | 3879 |
| 62. | BMH 85 RE Sikeston, LLC | 1/25/2026 | 26-30339 | 2698 |
| 63. | BMH Prime 95, LLC | 1/25/2026 | 26-30340 | 2635 |
| 64. | BMH Prime 96, LLC | 1/25/2026 | 26-30341 | 8446 |
| 65. | BMH Prime 97, LLC | 1/25/2026 | 26-30342 | 2430 |
| 66. | BMH-HR, LLC | 1/25/2026 | 26-30343 | 0229 |
| 67. | MacDonald Capital Corporation | 1/25/2026 | 26-30344 | 9459 |
| 68. | SAMBrownfield, LLC | 1/25/2026 | 26-30345 | 8187 |
| 69. | SAMPlainview, LLC | 1/25/2026 | 26-30346 | 4414 |

11825814v2 (75669.00002.000)



## **Exhibit A**

Settlement Agreement

**Execution Version**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASES

This *Settlement Agreement and Mutual Release* (the "**Settlement Agreement**"), dated as of January 26, 2026, is entered into by and among William Ian MacDonald (and any successor thereto) and certain affiliated MacDonald Entities identified on Schedule 1 hereto (collectively, "**MacDonald**"), BMH RTO, LLC and the other BMH Debtors (as defined below; the BMH Debtors and the Buddy Mac Entities (as defined below) are referred to herein collectively as the "**Debtors**"), and Phonix RBS, LLC ("**Lender**" or "**Phonix**"). MacDonald, the Debtors, and Phonix may be referenced herein collectively as the "**Parties**" and/or each as a "**Party**."

## BACKGROUND

A. On December 1, 2025 (the "**First Petition Date**"), Buddy Mac One, LLC ("**Buddy Mac One**"), BMH One RE, LLC ("**BMH One**"), BMH 95 RE Caruthersville, LLC ("**BMH 95**"), and BMH 96 RE Marion, LLC ("**BMH 96**"; together with BMH One and BMH 95, the "**Limited Recourse Guarantors**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and on December 4, 2025 (the "**Second Petition Date**"), BMH RTO, LLC and affiliated Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing Chapter 11 bankruptcy cases which are jointly administered under Bankruptcy Case No. 25-34839 (collectively and individually as the context may require, the "**Case**") before the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"). The Debtors that filed their respective Cases on the First Petition Date and the Second Petition Date are referred to herein as the "**BMH Debtors**."

B. The BMH Debtors are operating their business as debtors-in-possession under Chapter 11 of the Bankruptcy Code. William Ian MacDonald acts as the Debtors' chief executive officer.

C. Phonix is the BMH Debtors' pre-petition secured creditor with a blanket lien on all BMH Debtor assets, including cash collateral, and is owed secured obligations in an aggregate amount of at least $12.83 million. William Ian MacDonald has guaranteed the payment of the Phonix pre-petition indebtedness. Pre-petition, Phonix has filed enforcement actions against the BMH Debtors and William Ian MacDonald, including, without limitation, a receivership petition in Kansas state court and a claim asserting tort and other claims against William Ian MacDonald in Texas state court. As those claims are asserted against William Ian MacDonald those claims are referred to as the "**Phonix Pre-Petition MacDonald Enforcement Actions.**"

D. The BMH Debtors have sought to administer the Case based on the use of Phonix' cash collateral, to which Phonix did not consent. Phonix has objected to the BMH Debtors' use of cash collateral and has filed motions to convert the Case to a case under chapter 7 of the Bankruptcy Code and, in the alternative, for relief from the automatic stay to asserts its rights and claims against the BMH Debtors and their assets. The BMH Debtors have opposed such relief.

E.  On January 20, 2026, Phonix submitted a non-binding, non-inclusive summary expression of interest (the "**Phonix Expression**") in respect of a settlement, post-petition financing, and related sale matters to MacDonald and to the Debtors.

F.  On January 21, 2026, prior to the hearing on the Debtors' request for final authority to use cash collateral, William Ian MacDonald submitted a signed and sworn declaration regarding his personal financial statement (the "**MacDonald PFS**"), which declaration attached the MacDonald PFS, affirming that the MacDonald PFS was true and correct. Among other things, (1) MacDonald owns a direct interest in MRG Boulders Apartments, Ltd. ("**MRG Boulders**") and MacLubbock Boulders GP, Inc. ("**MacLubbock BGP**") (as general partner), which owns the Boulders Property (as defined below), (2) MRG Boulders is indebted to MacDonald Realty Group LLC (this entity is also the general partner of P.E.C. Finance, Ltd. and the fee owner of the Subject Alvarado Property (as defined below) ("**MacDonald Realty**" and the term "MacDonald Realty" shall include any MacDonald affiliate, subsidiary or related party as it relates to Boulders Advances) and the MacDonald Family Trust on account of advances made to MRG Boulders in an aggregate amount of no less than $4,239,910.13[1] (the "**Boulders Advances**"), (3) no less than $2,839,909.13 of the Boulders Advances is directly or indirectly owed to MacDonald Realty, and (4) no less than $1,400,001 of the Boulders Advances is directly or indirectly owed to the MacDonald Family Trust.

G.  On or about January 23, 2026 (the "**Third Petition Date**"; together with the First Petition Date and the Second Petition Date, the "**Petition Date**"), the entities listed on **Exhibit "G"** (collectively, the "**Buddy Mac Entities**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code before the Bankruptcy Court, commencing chapter 11 bankruptcy cases, which will be jointly administered with the BMH Debtor Cases. Each Debtor remains in possession of its assets and is operating its business as a debtor-in-possession under Chapter 11 of the Bankruptcy Code.

H.  On January 23, 2026, each of the Debtors and Phonix entered into that certain Secured Superpriority Debtor-In-Possession Loan, Security, and Guaranty Agreement (the "**DIP Credit Agreement**") and the Debtors have filed an emergency motion (the "**DIP Motion**") seeking approval of the DIP Credit Agreement on an interim and a final basis and for related relief, including, without limitation, approval of this Settlement Agreement at the final hearing on the DIP Motion pursuant to the DIP Motion. The DIP Motion requires MacDonald to pledge certain non-Debtor assets as collateral for the Phonix DIP loan and contemplates the sale of the Debtors' assets to Phonix by a credit bid, with MacDonald's consent and support. The agreement embodied in this transaction resolves disputes and claims by and among the Debtors, Phonix, and MacDonald, including, without limitation, the Phonix Pre-Petition MacDonald Enforcement Actions. Initially capitalized terms in this Settlement Agreement that are not otherwise defined shall have the meaning set forth in the DIP Credit Agreement, DIP Orders (as defined below), or in the Phonix Expression.

---

[1] This amount includes only intercompany transfers made to MRG Boulders as advances, and does not include Accrued Management Fees, which Fees are subordinate as to payment and otherwise to the Boulders Advances, the Subject Boulders Interest, and the Estate Boulders Share.

I.  The Parties have engaged in extensive good faith, arms' length negotiations and have agreed to resolve all matters between them on the terms set forth herein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    <u>Recitals</u>. The recitals set forth above are agreed to by the Parties and are incorporated herein by reference.

2.    <u>Conditions to Settlement Effective Date</u>. The effective date (the "**Settlement Effective Date**") of this Settlement Agreement and all of its terms shall be the date upon which all of the following have occurred: (i) the Buddy Mac Entities will have filed voluntary petitions under chapter 11 of the Bankruptcy Code and their cases will have been jointly administered in the Case (for the avoidance of doubt, neither MRG Boulders Apartments, Ltd. nor its general partner entity, shall file chapter 11 cases); (ii) this Settlement Agreement shall have been signed and delivered by and among the Parties; (iii) the unstayed entry of the Interim DIP Order (as defined in the Phonix Expression) by the Bankruptcy Court and the implementation of the transactions contemplated by the Phonix Expression and the DIP Documents, including, without limitation, in respect of the ERC Funds (as that term is defined in the Interim DIP Order) (for the avoidance of doubt, upon entry of the Final DIP Order, the ERC Funds shall be released to Phonix for application against its Pre-Petition Loan and DIP Loan obligations pursuant to the Final DIP Order and the DIP Documents and effective upon entry of the Final DIP Order, the ERC Funds shall be deemed collateral for the Pre-Petition Loan obligations as well as the DIP Loan obligations under the DIP Documents and the Final DIP Order), and, the transactions contemplated by the Sale Motion (as defined in the Interim DIP Order), in accordance with the milestones and other deadlines set forth in the Phonix Expression and the Interim DIP Order; (iv) MacDonald, MacDonald Realty, and MacLubbock BGP  shall grant to Phonix the Subject Boulders Interest (as defined below); (v) William Ian MacDonald shall grant to Phonix the Subject PEC Interest (as defined below); (vi) William Ian MacDonald and MacDonald Realty shall grant to Phonix the Subject Alvarado Mortgage (as defined below); and (vi) the entry of a final and non-appealable order of the Bankruptcy Court approving the Final DIP Order, which Final DIP Order likewise approves this Settlement Agreement.

3.    <u>Subject Boulders Interest</u>. **MacDonald, MacLubbock BGP, and MacDonald Realty shall grant to Phonix a participation in their rights in respect of the advances made to, and in respect of MacDonald's and MacLubbock BGP's equity in, MRG Boulders (collectively, the "Subject Boulders Interest") to accommodate and support the Phonix Pre-Petition Obligations, the DIP Obligations, and Adequate Protection Obligations (each as defined in the DIP Orders, as applicable), which grant shall be made and documented by a participation agreement (the "Participation Agreement") and other related documents, agreements, and instruments to be entered into prior to, and effective upon, entry of the Final DIP Order.** The Boulders real property that is the subject of the Subject Boulders Interest (the "**Boulders Property**"), which is owned and controlled by MacDonald and MacLubbock BGP, will be sold in an orderly process. Such orderly Boulders Property sale process is subject to Phonix rights of consent to: (i) the selection of the broker, (ii) the material conditions and requirements of the marketing process (marketing and sale milestones acceptable to Phonix shall be established), and (iii) the selection of a buyer (the "**Sale Process Consent Rights**"). The consents set forth in

the preceding sentence (a) shall be further evidenced by the Participation Agreement and (b) shall not be unreasonably withheld; in the event of any dispute regarding the withholding of any such consent, such dispute shall be subject to dispute resolution procedures to be set forth in the Participation Agreement. The Boulders Property shall be marketed by a third party national real estate brokerage firm unaffiliated with MacDonald or his affiliates (an "**Acceptable Broker**"), with the assistance of the Debtors' CRO, Mark Shapiro, and William Ian MacDonald to the extent his assistance is requested, and sold as soon as reasonably possible for a market price for cash. Phonix shall be entitled to regular updates regarding the marketing and sale process from any appointed broker. Further, MacDonald shall provide to Phonix updates regarding the financial condition and results relating to the Subject Boulder Interest promptly upon (x) the occurrence of any material changes thereto and (y) otherwise upon reasonable request. If the buyer assumes the senior loan encumbering the Boulders Property, the buyer will provide a new personal guaranty of the loan and William Ian MacDonald will be released from his personal guaranty of the loan, and with sale proceeds net of normal and reasonable closing costs to third parties for the transaction, to be distributed to Phonix on account of the Subject Boulders Interest as set forth herein.

4. <u>Subject Boulders Sale Distribution Matters</u>. MacDonald, MacLubbock BGP and Phonix agree, and the Debtors consent to such agreement, that, upon any sale of the Boulders Property, the net closing proceeds, after payment of the senior mortgage on the Boulders Property and normal and reasonable closing expenses to third parties and subject to the terms of the sale contract, shall be divided and paid at closing: (i) sixty percent (60%) to Phonix; (ii) twenty five percent (25%) to the MacDonald Family Irrevocable Trust; and (iii) fifteen percent (15%) to the Debtors' estates (the "**Estate Boulders Share**"). These sale distribution matters shall be further evidenced by the Participation Agreement.

5. <u>Subject PEC Interest</u>. **William Ian MacDonald shall grant to Phonix a lien on, and security interest in, all of his limited partner interests (the "PEC LP Interests") in P.E.C. Finance Ltd. (such lien and security interest, the "Subject PEC Interest") to accommodate and support the Phonix Pre-Petition Obligations, the DIP Obligations, and Adequate Protection Obligations, which grant shall be made and documented by a pledge agreement (the "Pledge Agreement") and other related documents, agreements, and instruments to be entered into prior to, and effective upon, entry of the Final DIP Order.** Phonix shall be permitted to purchase the PEC LP Interests in the WholeCo Sale (as defined below) pursuant to its credit bid. The real property, which is subject to liens and encumbrances which shall be addressed pursuant to the Subject PEC Real Property Sale Process (as defined below), that is owned and controlled by P.E.C. Finance Ltd. (the "**Subject PEC Real Property**"), will be sold in an orderly process, which may include the existing process ongoing in respect of the Subject PEC Real Property (the **"Subject PEC Real Property Sale Process"**). The Subject PEC Real Property Sale Process is subject to Phonix's Sale Process Consent Rights, which (a) shall be further evidenced by the Pledge Agreement and (b) shall not be unreasonably withheld; in the event of any dispute regarding the withholding of any such consent, such dispute shall be subject to dispute resolution procedures to be set forth in the Pledge Agreement. The Subject PEC Real Property shall be marketed by an Acceptable Broker (which may be the existing broker), with the assistance of the Debtors' CRO, Mark Shapiro, and William Ian MacDonald to the extent his assistance is requested, and sold as soon as reasonably possible for a market price for cash. Phonix shall be entitled to regular updates regarding the marketing and sale process from any appointed broker. Further, MacDonald shall provide to Phonix updates regarding the financial condition and results

relating to the Subject PEC Interest promptly upon (x) the occurrence of any material changes thereto and (y) otherwise upon reasonable request. MacDonald Realty, in its capacity as general partner of P.E.C. Finance, Ltd., by executing this Settlement Agreement, hereby (i) consents to the sale of the Subject PEC Real Property as conducted in accordance with the procedures specified above and (ii) agrees to execute and deliver to Phonix and PEC Finance, Ltd., as applicable, such further documents, instruments, and agreements reasonably requested in order to facilitate such sale and process. If the buyer assumes the senior loan encumbering the Subject PEC Real Property, the buyer will provide a new personal guaranty of the loan and William Ian MacDonald will be released from his personal guaranty of the loan, and with sale proceeds net of normal and reasonable closing costs to third parties for the transaction, to be distributed to Phonix on account of the Subject PEC Interest as set forth herein. William Ian MacDonald hereby represents and warrants to Phonix that the PEC LP Interests are not subject to any liens, pledges or security interests. If the Subject PEC Real Property is sold pursuant to the Subject PEC Real Property Sale Process, Phonix agrees that it shall distribute fifty percent (50%) of the proceeds from such sale to William Ian MacDonald.

6.    Subject Alvarado Real Property. In respect of that certain real property owned by MacDonald Realty in Alvarado, Texas (the "**Subject Alvarado Real Property**"), to secure (i) Phonix DIP Obligations and Adequate Protection Obligations under the Interim DIP Order, and (ii) Phonix DIP Obligations, Adequate Protection Obligations, and Pre-Petition Obligations under the Final DIP Order after entry of the Interim DIP Order and upon entry of the Final DIP Order, MacDonald Realty shall grant Phonix a mortgage lien (by deed of trust or as otherwise reasonably required by Phonix) (the "**Subject Alvarado Mortgage**") on the Subject Alvarado Real Property. Upon closing on the WholeCo Sale, MacDonald Realty shall convey to Phonix (or its designee) title to the Subject Alvarado Real Property by appropriate form of deed or conveyancing document acceptable to Phonix and related documents, agreements, and instruments, and Phonix will agree to a fixed reduction to its DIP Obligations and Pre-Petition Obligations, which shall be $298,000. MacDonald Realty hereby represents and warrants to Phonix that the Subject Alvarado Real Property is not subject to any lien or other encumbrance.

7.    Subject RTO Real Property. In respect of all real property owned by the Debtors specified on Schedule 7 hereto (such real property owned by the Debtors, the "**Subject RTO Real Property**"), Phonix and the Debtors agree that, subject to the Interim DIP Order and Final DIP Order (the "**DIP Orders**") and pursuant to the DIP Orders and the DIP Documents (and Phonix rights of consultation and consent to be contained therein), the Debtors will (a) file an application to retain, within 7 days of the filing of the Buddy Mac Entity Chapter 11 cases, a third party real estate brokerage firm unaffiliated with the Debtors or MacDonald to market the Subject RTO Real Property owned by Buddy Mac One, LLC in Tyler, Texas, and (b) the Debtors (and or any successor trustee) will sell such Subject RTO Real Property under Bankruptcy Code section 363(b) in the Debtors' Chapter 11 cases within 45 days of the filing of the retention application. In respect of the other Subject RTO Real Property, such property shall be subject to the Sale Motion and Phonix will include such Subject RTO Real Property in its credit bid and as part of that credit bid will satisfy any SouthState Bank mortgage liens on such Subject RTO Real Property at closing on the credit bid; *provided, however*, that Phonix will consent to the sale of Subject RTO Real Property owned by BMH 95 RE Caruthersville, LLC and BMH 85 RE Sikeston, LLC to National RTO to be applied as provided in the following sentence in satisfaction of its lien encumbering such Subject RTO Real Property, so long as the portion of the National RTO cash purchase price

allocated to such Subject RTO Real Property is paid to Phonix at any closing with National RTO. After satisfaction of SouthState Bank mortgage liens as set forth above, Phonix may apply the proceeds of the sale of any Subject RTO Real Property paid to Phonix to any of the Pre-Petition Obligations, DIP Obligations, or Adequate Protection Obligations in Phonix's sole discretion. Phonix reserves rights of direction and designation in respect of any leases relating to the Subject RTO Real Property.

8.    <u>Debtor/MacDonald Acknowledgments of Phonix Secured Claims</u>. Subject to the entry of the Final DIP Order and Bankruptcy Court approval of this Settlement Agreement, each of the Debtors and MacDonald acknowledge and consent to the validity, extent, amount, priority and enforceability of Phonix Pre-Petition Obligations, Phonix DIP Obligations, Phonix security interests and liens on Pre-Petition Collateral, the inclusion of the assets of BMH HR, LLC in such Phonix Pre-Petition Collateral, and Phonix DIP Liens and rights in DIP Collateral, and as otherwise set forth in the DIP Documents, the Interim DIP Order, and the Final DIP Order. For the avoidance of doubt, the acknowledgments and consents set forth in this paragraph shall survive execution of this Settlement Agreement. The DIP Credit Agreement, other DIP Documents, Interim DIP Order, and Final DIP Order shall be in form and substance acceptable to Phonix.

9.    <u>Credit Bidding</u>. Subject to the terms of this Settlement Agreement and as set forth in the DIP Documents and the DIP Orders, pursuant to documents (such documents, the "**Phonix Sale Documents**") acceptable to Phonix evidencing such a transaction (such transaction, the "**WholeCo Sale**"), including, without limitation the Sale Motion and an Asset Purchase Agreement, Phonix shall be designated as the stalking horse bidder for the sale of substantially all of the Debtors' assets and will be permitted to acquire such assets in a credit bid (including the DIP Obligations, Pre-Petition Obligations, and Adequate Protection Obligations) provided that third parties may top the credit bid at the sale hearing by submitting a higher and better offer, subject to bidding and sale procedures acceptable to Phonix which shall include an agreed minimum bid increment and reasonable bid protections and expense reimbursement. The Phonix Sale Documents shall be in form and substance acceptable to Phonix.

10.    <u>Budget</u>. The Debtors shall propose a winddown budget. The winddown budget shall be acceptable to Phonix and shall be funded solely from (a) residual assets of the estates after closing of the transactions contemplated by the Sale Motion to Phonix or a topping bidder and (b) the proceeds of the Estate Boulders Share.  The wind-down budget may be used to fund a liquidating Chapter 11 plan process, which can be done on a consolidated approval process basis or liquidation of the Debtors' estates by a Chapter 7 trustee following the conversion of the Debtors' cases. In the context of a liquidating plan, to the extent any Phonix debt remains outstanding following consummation of the WholeCo Sale, in any plan of reorganization, and without any impairment of its rights as a purchaser or secured creditor, Phonix agrees to subordinate any deficiency claim, whatever the priority or character of that deficiency claim under the Final DIP Order, that it may have to the claims of general unsecured creditors solely for purposes of enabling distribution of the Estate Boulders Share, and any contingent recoveries upon estate claims and causes of action arising under Chapter 5 not released pursuant to this Settlement Agreement, the Final DIP Order, or the WholeCo Sale order, to unsecured creditors, and facilitating plan confirmation (for the avoidance of doubt, such subordination shall not affect or impair Phonix's right to receive:  (i) the balance of the proceeds of the Subject Boulders Interest, (ii) the proceeds of the sale of (x) the Subject Real RTO Property owned by Buddy Mac One, LLC

in Tyler, Texas, and (y) the Subject PEC Real Property, or (iii) title to the Subject Alvarado Real Property).  Any such plan and confirmation order shall be in form and substance acceptable to Phonix, MacDonald, and the Debtors.  Any such liquidating plan will incorporate and implement this Settlement Agreement.

11.     Debtors' MacDonald Release. **Effective on the Settlement Effective Date, the Debtors, on behalf of themselves and their estates (collectively, the "Estate Releasors") shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged William Ian MacDonald and any and all of his affiliates, relations, agents, representatives, attorneys, and parties directly related to such released parties such as family-related trusts and MacDonald Capital, LP (in each case excluding, for the avoidance of doubt, the Debtors and their estates) (the "MacDonald Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Estate Releasors have, have had, may have or may claim to have against the MacDonald Releasees arising out of, related to or in connection with chapter 5 of the Bankruptcy Code or arising from MacDonald's actions or inactions in any capacity, including as chief executive officer, director, manager or authorized representative of the Debtors; provided, however and for the avoidance of doubt, the foregoing release shall not limit nor be deemed to limit the rights of the Debtors to enforce this Settlement Agreement in accordance with its terms and/or to assert claims against William Ian MacDonald if the MacDonald PFS is materially false.**

12.     Phonix MacDonald Release. **Effective on the Settlement Effective Date, Phonix, binding their successors and assigns, shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged the MacDonald Releasees, as defined above, from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which Phonix has, has had, may have or may claim to have against the MacDonald Releasees in connection with the Phonix Pre-Petition Debt Documents, any guaranty claims in respect of such Phonix Pre-Petition Debt Documents, and arising out of, related to or in connection with the Phonix MacDonald Pre-Petition Enforcement Actions; provided, however and for the avoidance of doubt, the foregoing release shall not limit nor be deemed to limit the rights, liens, security interests, claims, and expenses of Phonix under the DIP Documents, cash collateral orders of the Bankruptcy Court, the Interim DIP Order, the Final DIP Order, any asset purchase agreement ("Phonix CB APA") evidencing the sale of substantially all of the Debtors assets by credit bid to Phonix (the "WholeCo Sale"), the sale order of the Bankruptcy Court authorizing the WholeCo Sale or an alternative transaction to the WholeCo Sale expressly permitted by the Phonix CB APA, and any related Phonix Sale Documents, to enforce this Settlement Agreement or the Participation Agreement, in accordance with each of its terms, and/or to assert claims against the MacDonald Releasees if the MacDonald PFS is materially false.**

**13.** _MacDonald/Debtor Phonix Release_. **Effective on the Settlement Effective Date, each of MacDonald, the MacDonald Releasees, and the Debtors (on behalf of themselves and their estates), and their affiliates, attorneys, financial advisors, and other professionals, and related entities (the "Debtor/MacDonald Releasors" and, together with the Estate Releasors and Phonix, collectively, the "Releasors"), binding their successors and assigns, shall be deemed to have irrevocably and unconditionally, fully, finally, and forever waived, released, acquitted and discharged Phonix, its assignor and/or predecessor-in-interest, affiliates, and related entities, and each of their respective managers, directors, officers, employees, agents, and representatives, (the "Phonix Releasees") from (a) any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Debtor/MacDonald Releasors have, have had, may have or may claim to have against the Phonix Releasees arising out of, related to or in connection with the Pre-Petition Debt Documents and arising out of, related to or in connection with the Phonix MacDonald Pre-Petition Enforcement Actions; provided, however and for the avoidance of doubt, the foregoing release shall not limit nor be deemed to limit the rights of Debtor/MacDonald Releasors to enforce this Settlement Agreement in accordance with its terms.**

**14.** _Debtor/Phonix Transfer Release_. **Effective on the Settlement Effective Date, each of Phonix and the Debtors, and their affiliates and related entities, binding their successors and assigns, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived and released any and all claims and/or causes of action, including but not limited to Chapter 5 causes of action, which could arise from those transfers referenced in the Plains Capital Bank Deposit Report(s) dated January 15, 2026 and attached hereto as Appendix 14.**

15.     For avoidance of doubt, the releases contained in this Settlement Agreement include any released claim that any Releasor does not know or suspect to exist in such Releasor's favor at the time of such release that if known by such Releasor, might have affected this Settlement Agreement. With respect such releases, the Parties stipulate and agree that, on their own behalf and on behalf of their respective Releasors, upon the execution of this Settlement Agreement, each of the Releasors expressly waives and shall be deemed to have waived, any and all rights and benefits of California Civil Code § 1542, to the extent applicable, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Each of the Parties expressly waives, and shall be deemed to have waived, on its behalf on and behalf of its respective Releasors, any and all rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar,

comparable or equivalent in effect to California Civil Code § 1542. The Releasors may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of the releases contained in this Settlement Agreement, but each of the Releasors shall expressly have and be deemed to have, fully, finally and forever settled and released any and all of the claims subject to the releases contained in this Settlement Agreement, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and shall be deemed to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

16.     Notwithstanding anything to the contrary in the DIP Documents or this Settlement Agreement, the Debtors and MacDonald shall retain and not transfer to Phonix any rights, claims and/or defenses any of them may have against the Buddy's Franchisor and its parent company FRG, arising out of the franchisor/franchisee relationship between the parties, including the Debtors and MacDonald and their affiliates.

17.     <u>No Admissions</u>. This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the matters that are the subject of releases or as an admission of any liability by any Party.

18.     <u>Severability</u>. The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity, and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

19.     <u>Miscellaneous</u>.

a.     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary: (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

b.     Each of the Parties shall execute and deliver any and all additional papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

c.     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations, or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

d. This Settlement Agreement shall be governed by and construed in accordance with the law of the state of Texas without regard to any choice of law provisions.

e. This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

f. Except as provided in paragraph 3, the Bankruptcy Court shall retain exclusive jurisdiction (and the Parties expressly consent to such jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer, or enforce the terms and provisions of, this Settlement Agreement.

g. Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

h. In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (i) it does so with full knowledge of its available rights, (ii) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (iii) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (iv) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

i. The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

j. This Settlement Agreement shall not be modified, altered, amended, or vacated without the written consent of all parties hereto or order of the Bankruptcy Court.

k. This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto, including any subsequently appointed Chapter 7 trustee.

l. The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

20. <u>Bankruptcy Court Approval</u>. The Debtors shall seek approval of this Settlement Agreement at the hearing on final relief in respect of the DIP Motion. In the event the Bankruptcy Court denies approval of this Settlement Agreement, this Settlement Agreement shall be null and void and of no force and effect, and the Parties shall be returned to the same positions they were

in prior to execution of this Settlement Agreement, as if this Settlement Agreement had never been executed.

[signature page(s) follow]

Docusign Envelope ID: A6AA7814-F70A-4C9E-A11D-4C01C566D695

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date first set forth above:


ACCEPTED AND AGREED TO BY:


**PHONIX RBS LLC**

By: _____
Name: Brent Turner
Title: Manager


[signature page(s) continue]

Signature Page to Settlement Agreement and Mutual Release

Docusign Envelope ID: 16276386-3898-4CFB-4B44-C68E8E6C5A97

_DocuSigned by:_

_Ian MacDonald_
EFD8FED8026C428 _____ [seal]
WILLIAM IAN MACDONALD


**DEBTORS:**

BUDDY MAC HOLDINGS, LLC
BMH RTO, LLC
BUDDY MAC TWENTY-ONE, LLC
BUDDY MAC TWENTY-TWO, LLC
BUDDY MAC TWENTY-THREE, LLC
BUDDY MAC TWENTY-FOUR, LLC
BUDDY MAC TWENTY-FIVE, LLC
BUDDY MAC TWENTY-SIX, LLC
BUDDY MAC TWENTY-SEVEN, LLC
BMH-TNM 28, LLC
BMH-TNM 29, LLC
BMH-TNM 30, LLC
BMH-TNM 31, LLC
BMH-TNM 32, LLC
BMH-TNM 33, LLC
BMH-RCL 34, LLC
BMH-RCL 35, LLC
BMH-RCL 36, LLC
BMH-RCL 37, LLC
BMH-RCL 38, LLC
BMH-RCL 39, LLC
BMH-RCL 40, LLC
BMH-RCL 41, LLC
BMH-RCL 42, LLC
BMH-FAN 43, LLC
BMH-FAN 44, LLC
BMH-FAN 45, LLC
BMH-FAN 46, LLC
BMH-FAN 47, LLC
BMH-FAN 48, LLC
BMH-FAN 49, LLC
BMH-FAN 50, LLC
BMH-FAN 51, LLC
BMH-FAN 52, LLC
BMH-FAN 53, LLC
BMH-FAN 54, LLC
BMH-SM 79, LLC
BMH-SM 80, LLC
BMH-SM 81, LLC

Signature Page to Settlement Agreement and Mutual Release

BMH-SM 82, LLC
BMH-SM 83, LLC
BMH-SM 84, LLC
BMH-SM 85, LLC
BMH-SM 86, LLC
BMH-SM 87, LLC
BUDDY MAC ONE, LLC
BMH ONE RE, LLC
BMH 95 RE CARUTHERSVILLE, LLC
BMH 96 RE MARION, LLC
BUDDY MAC TWO, LLC
BUDDY MAC SIX, LLC
BUDDY MAC SIX RE, LLC
BUDDY MAC EIGHT, LLC
BUDDY MAC ELEVEN, LLC
BUDDY MAC TWLEVE, LLC
BUDDY MAC EIGHTEEN, LLC
BUDDY MAC NINETEEN, LLC
BMH-NEW 58, LLC
BMH-NEW 62, LLC
BMH-WF TX 67, LLC
BMH-TB 75, LLC
BMH 85 RE SIKESTON, LLC
BMH PRIME 95, LLC
BMH PRIME 96, LLC
BMH PRIME 97, LLC
BMH HR LLC
SAM BROWNFIELD, LLC
SAM PLAINVIEW, LLC
MACDONALD CAPITAL CORPORATION

By: *Ian MacDonald*
DocuSigned by:
EFD8FED8028C428...

Name: William Ian MacDonald
Title: Authorized Representative

[signature page(s) continue]

Signature Page to Settlement Agreement and Mutual Release

Docusign Envelope ID: 16276386-3B98-4CFB-8B44-C68E8F6C5A97

**MACDONALD ENTITIES:**

MRG BOULDERS APARTMENTS, LTD.
MRG PREMIUM FINANCE, LLC
MACLUBBOCK BOULDERS GP INC.
P.E.C. FINANCE, LTD.
MACDONALD REALTY GROUP, LLC
MACDONALD CAPITAL, LP

By: _____

 Name: William Ian MacDonald
 Title: Authorized Representative

Signature Page to Settlement Agreement and Mutual Release

## SCHEDULE 1

### MacDonald Entities

1. MRG Boulders Apartments, Ltd.
2. MRG Premium Finance, LLC
3. MacLubbock Boulders GP Inc.
4. P.E.C. Finance, Ltd.
5. MacDonald Capital, LP
6. MacDonald Realty Group, LLC

## SCHEDULE 7

### Subject RTO Debtor Real Property

| Ownership Entity | Street Address | City, State | ZIP |
|---|---|---|---|
| SAMPlainview, LLC | 414 N. Columbia St. | Plainview, TX | 79072 |
| MacDonald Capital Corp | 218 N. Main St. | Seminole, OK | 74868 |
| Buddy Mac Six RE, LLC | 1100 N. HWY 491 | Gallup, NM | 87301 |
| SAMBrownfield, LLC | 501 W. Main St. | Brownfield, TX | 79316 |
| BMH 85 RE Sikeston, LLC | 1501 E Malone Ave | Sikeston, MO | 63801 |
| BMH One RE, LLC | 1404 W. Gentry Pkwy | Tyler, TX | 75702 |
| BMH 95 RE Caruthersville, LLC | 810 W 13th St | Caruthersville, MO | 63830 |
| BMH 96 RE Marion, LLC | 103 N Carbon | Marion, IL | 62959 |

### EXHIBIT G

**Buddy Mac Entities**

1. Buddy Mac Two, LLC
2. Buddy Mac Six, LLC
3. Buddy Mac Six RE, LLC
4. Buddy Mac Eight, LLC
5. Buddy Mac Eleven, LLC
6. Buddy Mac Twleve, LLC
7. Buddy Mac Eighteen, LLC
8. Buddy Mac Nineteen, LLC
9. BMH-NEW 58, LLC
10. BMH-NEW 62, LLC
11. BMH-WF TX 67, LLC
12. BMH-TB 75, LLC
13. BMH 85 RE Sikeston, LLC
14. BMH Prime 95, LLC
15. BMH Prime 96, LLC
16. BMH Prime 97, LLC
17. BMH HR LLC
18. SAM Brownfield, LLC
19. SAM Plainview, LLC

## APPENDIX 14

**Plains Capital Bank Deposit Report(s)**

(See attached)

# Deposit Accounts Activity Summary

| | |
|---|---|
| **Report Created:** | 01/15/2026 12:00:31 AM (ET) |
| **Account:** | Bmh-Hr LLC - Checking - 111322994 - *2900 - Available $387,161.58 |
| **Date range:** | 11/01/2025 to 01/14/2026 |
| **Transaction types:** | All transactions |
| **Detail option:** | Includes transaction detail |

## Bmh-Hr LLC - Checking - 111322994 -  *2900 - Available $387,161.58

| Post Date | Reference | Additional Reference | Description | Debit | Credit | Calculated Balance |
|---|---|---|---|---|---|---|
| 01/09/2026 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $387,161.58 |
| 01/09/2026 | 202600900025360 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2026009000253600;  BNF BMH RTO LLC;REF | $56,545.57 | | $387,196.58 |
| 01/07/2026 | 997000107184549 | | BOOK TRANSFER DEBIT REF 0071845L    FUNDS TRANSFER TO DEP XXXXX6665    FROM BCY A PPRV PMT | $24,583.33 | | $443,742.15 |
| 12/31/2025 | 000000000000000 | | INTEREST CREDIT | | $115.11 | $468,325.48 |
| 12/31/2025 | 997001231102246 | | BOOK TRANSFER DEBIT REF 3651022L    FUNDS TRANSFER TO DEP XXXXX6665    FROM APPRO VED BMH BCY DEC | $24,583.33 | | $468,210.37 |
| 12/29/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $492,793.70 |
| 12/29/2025 | 202536300019110 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025363000191100;  BNF KUTAK ROCK LLP IOLTA ACCOUNT;REF | $9,578.69 | | $492,828.70 |
| 12/03/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $502,407.39 |
| 12/03/2025 | 202533700021580 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025337000215800;  BNF KANE RUSSELL COLEMAN & LOGAN PC TRU ST ACC;REF | $75,000.00 | | $502,442.39 |
| 12/01/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $577,442.39 |
| 12/01/2025 | 202533500029920 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025335000299200;  BNF GLASS RATNER ADVISORY & CAPITAL GRO UP, LL;REF | $150,000.00 | | $577,477.39 |
| 12/01/2025 | 997001201132905 | | BOOK TRANSFER DEBIT REF 3351329L    FUNDS TRANSFER TO DEP XXXXX6665    FROM PAY | $45,000.00 | | $727,477.39 |
| 11/28/2025 | 000000000000000 | | INTEREST CREDIT | | $19.05 | $772,477.39 |

| 11/26/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $772,458.34 |
| 11/26/2025 | 202533000034050 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025330000340500;  BNF KANE RUSSELL COLEMAN & LOGAN PC TRU ST ACC;REF | $500,000.00 | | $772,493.34 |
| 11/26/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $1,272,493.34 |
| 11/26/2025 | 202533000033900 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025330000339000;  BNF KUTAK ROCK LLP IOLTA ACCOUNT;REF | $5,000.00 | | $1,272,528.34 |
| 11/21/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $1,277,528.34 |
| 11/21/2025 | 202532500008490 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025325000084900;  BNF CLIFFORD TOWNS;REF | $249,816.33 | | $1,277,563.34 |
| 11/21/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $1,527,379.67 |
| 11/21/2025 | 202532500007570 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025325000075700;  BNF BUDDY MAC HOLDINGS LLC; REF | $199,866.21 | | $1,527,414.67 |
| 11/21/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $1,727,280.88 |
| 11/21/2025 | 202532500008220 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025325000082200;  BNF ZARCO EINHORN SALKOWSKI & BRITO PA; REF | $100,000.00 | | $1,727,315.88 |
| 11/21/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $1,827,315.88 |
| 11/21/2025 | 202532500007720 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025325000077200;  BNF JACKSON WALKER LLP;REF | $100,000.00 | | $1,827,350.88 |
| 11/21/2025 | 000000000000000 | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $1,927,350.88 |
| 11/21/2025 | 202532500007520 | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025325000075200;  BNF WOMBLE BOND DICKENSON LP;REF | $80,376.81 | | $1,927,385.88 |
| 11/19/2025 | | | MISCELLANEOUS DEBIT WIRE FEE | $35.00 | | $2,007,762.69 |
| 11/19/2025 | | | OUTGOING WIRE TRANSFER OUTGOING WIRE 2025323000242800; BNF SRB CAPITAL   LLC;REF | $607,519.63 | | $2,007,797.69 |
| 11/18/2025 | | | DEPOSIT | | $2,615,317.32 | $2,615,317.32 |
| 01/14/2026 | **Totals** | | | **$2,228,289.90** | **$2,615,451.48** | |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BUDDY MAC HOLDINGS, LLC, *et al.*, | § | Case No. 25-34839-mvl11 |
| | § | |
| | § | (Initial Debtor Cases Jointly |
| Debtors. [1] | § | Administered) |
| | § | |
| | § | (Joint Administration Requested for |
| | § | Subsequent Debtor Cases) |
| | § | |

**ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION FOR (I) APPROVAL OF
SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND PHONIX RBS LLC
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019; AND (II)
GRANTING RELATED RELIEF**

Upon the motion [ECF #____] (the "<u>Motion</u>")[2] of Buddy Mac Holdings, LLC and its debtor

affiliates, as debtors and debtors-in-possession in the above-referenced chapter 11 cases (including

---

[1] A complete list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax ID numbers, is set forth on the attached **<u>Schedule I</u>** (Initial Debtors) and **<u>Schedule II</u>** (Subsequent Debtors). The Debtors' service address is 400 E. Centre Park Blvd., Suite 101, DeSoto, Texas 75115.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the Initial Debtors and the Subsequent Debtors (as each is defined in the Motion), collectively, the "Debtors"), for entry of an order (this "Order") (i) approving the Settlement Agreement dated January 25, 2026 attached to the Motion as **Exhibit A** (the "Settlement Agreement")[3] by and among William Ian MacDonald and certain affiliated MacDonald Entities identified on Schedule 1 to the Settlement Agreement (collectively, "MacDonald"), the Debtors**,** and Phonix RBS LLC ("Phonix" together with the Debtors and MacDonald, the "Parties") pursuant to Bankruptcy Rule 9019; and (ii) granting related relief; This Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that (i) the relief requested in the Motion is fair, equitable, and in the best interests of the Debtors' estate, their creditors, and other parties in interest; (ii) that notice of the Motion and opportunity for a hearing on the Motion were sufficient and appropriate under the circumstances and that no other or further notice need be provided; (iii) that the Settlement Agreement has been entered into in good faith for purposes of Bankruptcy Rule 9019; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that the settlement was entered into in good faith; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

     **IT IS HEREBY ORDERED AS FOLLOWS:**

1.       The Settlement Agreement attached to this Motion as **Exhibit A** is approved.

2.       The Parties are authorized to enter into the Settlement Agreement.

---

[3] All capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

11826603v1 (75669.00002.000)

3.     The terms and conditions of the Settlement Agreement are incorporated into this Order and are immediately effective and enforceable upon its entry.

4.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order.

5.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###